UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 11-23455-CIV-MORENO

LAURA YELITZA CIFUENTES and MERLE
DE LAS MERCEDES SILVA CASTRO,

    Plaintiffs,

vs.

REGIONS BANK,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This case stems from a securities fraud criminal case brought by the Securities and Exchange Commission against the Defendant, Regions Bank and its partners, U.S. Pension Trust Corp. and U.S. College Trust Corp. (collectively, "USPT"). USPT sold various multi-year securities or Investment Plans to more than 14,000 individuals residing primarily in Latin America, including Plaintiffs and the class members. Compl. ¶ 12. The Investment Plans were vehicles through which Plaintiffs' funds were invested in U.S. mutual funds. *Id.* The Investment Plans required investors to execute a trust agreement, whereby Regions would serve as trustee on behalf of Plaintiffs concerning their investments in USPT's Investment Plans. Compl. ¶¶ 16-18. USPT offered and sold the Investment Plans to new investors from 1995 through January 2008, when Regions stopped accepting Investment Plan contributions from new USPT investors. Compl. ¶ 18 n.5. USPT and Regions continued to accept Investment Plan contributions from existing investors through August 2009. *Id.*

In September 2009, Regions was criminally charged with aiding and abetting in the sale of

securities by an unregistered dealer, USPT, and on that same day Regions entered into a consent of final judgment with the SEC, paying a civil fine of $1 million and disgorgement of $1. *Sec. Exch. Comm'n v. Regions Bank*, No. 09-22821-CIV-COOKE (S.D. Fla., Sept. 21, 2009). Compl. ¶¶ 25-27. One year later, one of the Defendant's business partners, USPT, was found guilty of unlawfully engaging in the sale of securities as an unregistered dealer after a criminal trial before Judge José E. Martinez in September 2010. *U.S. Sec. and Exch. Comm'n v. U.S. Pension Trust Corp., et al.*, No. 07-22570-CIV-MARTINEZ (S.D. Fla. Sept. 30, 2010)(*aff'd U.S. Sec. and Exch. Comm'n v. U.S. Pension Trust Corp., et al.*, No. 10-15095 (11th Cir. Oct. 26, 2011)). As a result of this ruling, Judge Martinez ordered U.S. Pension Trust Corp. and U.S. College Trust Corp. to disgorge $62 million and pay $50 million in civil penalties. *Id.* Based on this ruling there is no dispute that USPT acted as an unregistered broker-dealer under federal law, which has provisions similar to Fla. Stat.§ 517.12(1) (2011). Compl. ¶ 13.

Another year later, in September 2011, the Plaintiffs filed this one-count suit against Defendant for violation of Fla. Stat. § 517.12(1) (2011) requiring sellers of securities to be registered with the state of Florida. The Plaintiffs seek rescission of the investment plans they purchased from the Defendant, along with interest and attorneys fees as permitted by Fla. Stat. § 517.211(1) (2011). The plaintiffs' complaint alleges that if USPT's actions constituted the sale of securities as defined by Florida law, the Defendant in this case was also selling securities and therefore violated the law by not registering as a securities seller with the state of Florida. The Court holds that the new plaintiffs have standing to assert this action and that the statute of limitations does not bar this suit from proceeding.

## LEGAL DISCUSSION

### I. Statute of Limitations: When Should Plaintiffs Have Discovered Their Claim

The Defendant argues that the Plaintiffs' action is barred by the two year statute of limitations that applies to the rescission of securities. Whether the Plaintiffs' rescission action is barred by the statute of limitations depends on when the Plaintiffs could or should have discovered the facts giving rise to this action, namely, that Regions should have been registered as a securities seller under Florida law but was not. Under the Florida Securities and Investor Protection Act, a plaintiff has two years from the date of discovery to file its complaint. Fla. Stat. § 95.11(4)(e) (2011). The clock on a rescission claim starts running "'from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.'" *GLK, L.P. v. Four Seasons Hotel Ltd.*, 22 So. 3d 635, 637 (Fla.3d DCA 2009). Under Florida law, "the limitations period begins to run as soon as 'a plaintiff has actual or constructive knowledge of only the facts forming the basis of his cause of action and not that of the cause of action itself.'" *Id.* (quoting *Becks v. Emery-Richardson, Inc.*, 1990 WL 303548 *9 (S.D. Fla. Dec. 21, 1990)).

The Plaintiffs propose two distinct dates for when the clock began running on their rescission claim. The Plaintiffs propose either September 21, 2009 when the SEC entered into a consent judgment with Regions for aiding and abetting in the sale of securities by an unregistered dealer, or September 30, 2010 when Judge Martinez ruled that USPT had been doing business as a securities seller and was required to be registered under Florida law. Alternatively, the Defendant proposes that the clock began running on the last date the investment plans were sold to the members of the proposed Plaintiff class. There are two possibilities for this last date of sale, both of which precede the Plaintiffs' proposed dates. The Defendant proposes either the last date on which investment plans

-3-

were sold to new investors, January 2008, or the last date on which Regions accepted contributions to the plans of current investors, August 2009. If this Court accepts one of the Plaintiffs' proposed dates, then the suit was timely when it was filed on September 21, 2011, but if this Court accepts one of the Defendant's dates then the suit was not.

In support of its proposed dates, the Defendant argues that the facts of this case are akin to those in *GLK, L.P. v. Four Seasons Hotel Ltd.*, 22 So. 3d 635, 637 (Fla. 3d DCA 2009) in which buyers of condominium units sought to rescind their purchases four years later based upon the seller's failure to register the units as "securities" as required by Florida law. The state appellate court affirmed the dismissal of the complaint, holding that the facts giving rise to that rescission claim occurred on the date of sale because the lack of registration could have been discovered by the buyers on that day. The court found that the seller could not conceal the fact that the units were not registered as securities, and thus could not conceal the cause of action from the plaintiffs. *See Four Seasons*, 22 So. 3d at 637 "[w]ith the exercise of due diligence, [plaintiffs] could have discovered the alleged securities violations at the time of the transaction and/or within the two-year statute of limitations."). The court rejected the plaintiffs' argument that it was difficult for them to ascertain what constitutes a security, stating that the plaintiffs could have exercised due diligence and discovered that the condominiums were securities and therefore required to be registered with the state. *Four Seasons*, 22 So. 3d at 637-38. The Defendant in the instant case presses this Court to interpret *Four Seasons* to have created a bright line rule that non-registration claims begin to run at the time of sale of the security.

The Defendant asserts that at the time the Plaintiffs purchased the investment plans, they had all the information necessary to determine if these plans were securities and if Regions was

registered as a securities seller. Accordingly, the Defendant urges this Court to apply the analysis of *Four Seasons*: that at the time of sale, the Plaintiffs could have exercised due diligence and discovered that the investment plans were securities and that therefore Regions was a securities seller that should have been registered with the state. Analogous to the *Four Seasons* defendant who could not conceal that the condominiums were unregistered as securities, Defendant argues that it could not conceal the fact that it was not registered as a seller of securities with the state of Florida.

The Plaintiffs distinguish their rescission claim in the instant case from that in *Four Seasons* for two reasons. First, they rely on the *Four Seasons* ruling that a dismissal based on the statute of limitations is proper only if the Plaintiffs' amended complaint affirmatively pled facts conclusively establishing the statute of limitations as a defense, and their complaint does not. Second, they argue that expecting Plaintiffs to have been able to determine that Regions should have been registered as a securities seller goes beyond the due diligence that could be expected of Plaintiffs.

## A. Plaintiffs affirmatively pled that they were unaware of the facts giving rise to their cause of action

In dismissing the *Four Seasons* plaintiffs' rescission claim, that court stated that "[a] court may grant a motion to dismiss based on the statute of limitations 'only in extraordinary circumstances where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a matter of law.'" *Four Seasons*, 22 So. 3d at 636-37 (citing *Saltponds Condo. Ass'n v. McCoy*, 972 So. 2d 230, 231 (Fla. 3d DCA 2007)). The Plaintiffs distinguish their amended complaint from the complaint in *Four Seasons* on the basis that their complaint properly pleads that they did not know the facts giving rise to their cause of action at the time of sale of the investment plans. By contrast, the *Four Seasons*

court was hamstrung by the fact that the complaint in that case alleged that the plaintiffs "had the documents containing the necessary factual information to form the basis of their cause of action by the time of the July 23, 2004 transaction." *See Four Seasons*, 22 So. 3d at 637. Since the *Four Seasons*' plaintiffs had pled in their complaint that they possessed all factual information at the time of sale, the defendant's statute of limitations defense was affirmatively present in the pleadings. Therefore the *Four Seasons* complaint provided the necessary facts for a statute of limitations defense by the *Four Seasons* defendant. By contrast, the Plaintiffs in the instant case affirmatively pled in their complaint that they did not know the facts giving rise to their cause of action before Judge Martinez's ruling in September 2010. Therefore, the Plaintiffs argue no statute of limitations defense "affirmatively appear[s]" in their complaint as it did in the *Four Seasons* case.

**B. Plaintiffs could not have known that Regions was engaging in business as a seller of securities at the time of sale of the investment plans**

The Plaintiffs concede that a determination of whether a particular investment instrument falls under the definition of a security can normally be determined by reference to the documentation provided to effectuate the transaction. *Four Seasons*, 22 So. 3d at 637-38. This documentation provided the *Four Seasons* plaintiffs with the necessary information about their securities to inform them of their claim, but Plaintiffs' argue the documentation in the instant case could not have provided sufficient information regarding Regions' classification as a securities dealer. Plaintiffs contend that due diligence could not have led them to ascertain that Regions was engaging in business as an unregistered seller of securities because that classification depends upon a myriad of facts beyond the documentation of the investment plans themselves. The Plaintiffs' argument hinges on the theory that although the identification of an investment instrument as a security can be made

based on its documentation, the identification of a corporate entity as a seller of securities cannot.

The Plaintiffs argue that identifying Regions as a securities seller required a complicated legal determination involving information about Regions to which the Plaintiffs had no access and therefore was beyond the Plaintiffs' reach to ascertain. The Plaintiffs point to the lengthy trial before Judge Martinez on whether USPT, Defendant's partner, was a securities seller as evidence of the complicated analysis required to identify whether an entity is or is not engaged in the sale of securities. The Plaintiffs distinguish their claim from *Four Seasons* on the basis that they had no reason to know that Regions was acting as a seller of securities until Judge Martinez issued his ruling that USPT was doing business as a dealer engaged in the sale of securities, or alternatively, when the SEC entered into a consent judgment with Regions for aiding and abetting USPT. Judge Martinez ruled that USPT was engaged in the sale of securities, thereby putting Plaintiffs on notice that Regions might be classified likewise, only after cross-motions for summary judgment and a full trial. The Plaintiffs argue that expecting them to have conducted the same analysis as Judge Martinez did for USPT goes beyond the due diligence standard for a rescission claim.

The Court agrees with Plaintiffs' analysis that the statute of limitations does not bar their cause of action because the Plaintiffs could not have been aware of their claim on the date of sale of the investment plans. The earliest possible applicable date for the statute of limitations was September 21, 2009 when the SEC file suit against, and entered into a consent judgment with, Regions for aiding and abetting in the sale of securities by an unregistered dealer, USPT. Accordingly, the Plaintiffs' filing of this suit was timely.

## II. Standing Issue of Newly Named Plaintiffs: Whether Substitution is Permitted

Named Plaintiffs are both residents of Columbia and are two surviving family members of

Guido E. Cifuentes who opened an investment plan with Regions during the time in question. Compl. ¶ 2 n.1. Mr. Cifuentes passed away intestate on December 7, 2009. *Id.* The original complaint named the siblings of the deceased Mr. Cifuentes as Plaintiffs because Plaintiffs' counsel believed that these individuals inherited Mr. Cifuentes' claims under Columbian intestacy law. However, Plaintiffs' counsel subsequently came to appreciate that their interpretation of Columbian law had been mistaken. They determined that Mr. Cifuentes' surviving spouse and daughters had inherited his claims and Plaintiffs' counsel has filed an amended complaint reflecting these new named Plaintiffs and a motion to permit this substitution. A standing issue arises from this substitution of new Plaintiffs in the amended complaint because the new Plaintiffs do not include any members that were part of the original complaint. The Defendant argues that the standing issue rises to the level of a failure under Article III of the U.S. Constitution, while the Plaintiff contends that the mistaken identification can be easily corrected with substitution under Fed. R. Civ. P. 17.

The Defendant argues that the previously named Plaintiffs lacked standing because they never inherited the legal claims of the decedent. Once the two original Plaintiffs are removed for lack of standing, Defendant argues no original Plaintiffs remain who can make the amendment to substitute the new Plaintiffs. Defendant's argument hinges on whether amendment of the complaint requires that the original Plaintiffs had standing to invoke the court's jurisdiction, or in other words, whether substitution under Fed. R. Civ. P. 17 is available only when the original plaintiffs have standing. Plaintiffs' respond that the newly named Plaintiffs have a close identity of interest with the prior named plaintiffs because they all represented the rights of the estate of Mr. Cifuentes and therefore the court should permit the substitution.

**A. Whether Fed. R. Civ. P. 17 substitution of parties is available only when the original**

**plaintiff has standing**

The Defendant argues that Article III standing is a jurisdictional requirement that must be satisfied by the original complaint, not by the amended complaint, and that the existence of standing is determined as of the date a suit is filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 (1992). According to Defendant, the only recourse for the newly named Plaintiff is to file a new suit. The Defendant argues that the common theme in Fed. R. Civ. P. 17 case law is that substitution is permitted where there has been no gap in Article III standing. In the instant case, Defendant alleges a gap existed between the filing of the suit by the originally named Plaintiffs and the attempted substitution of new Plaintiffs. The Defendant argues that Fed. R. Civ. P. 17 cannot be used to "expand the subject matter jurisdiction of federal courts" and that the Rule "must be read with the limitation that this court must at a minimum have subject matter jurisdiction over the original claims." *Live Entm't v. Digex, Inc.*, 300 F. Supp. 2d 1273, 1279 (S.D. Fla. 2003).

The Defendant characterizes the facts in this case as similar to those in *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278 (5th Cir. March 19, 1981), in which a decision by the U.S. Supreme Court excluded certain plaintiffs, such as Summit Office Park, from having a cause of action under federal antitrust laws and changed the cause of action available to other plaintiffs. *Summit Office Park*, 639 F.2d at 1280. Relying on the U.S. Supreme Court's ruling, the district court dismissed the case. In affirming the dismissal, the appellate court noted the uniqueness of the procedural history of this case in which "the original plaintiff was left with no cause of action upon which it could recover as the result of an intervening Supreme Court decision." *Id.* at 1282. Nonetheless, the Fifth Circuit held that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by

substituting new plaintiffs, a new class, and a new cause of action." *Id.* at 1283. The court reasoned that the dismissal of the prior plaintiffs meant "there was no plaintiff before the court with a valid cause of action," and therefore "there was no proper party available to amend the complaint." *Id.* at 1282.

The Plaintiffs in the instant case argue that *Summit Office Park* is inapplicable because the amended complaint in that case not only substituted new parties but involved "the substitution of an entirely new cause of action, a new class, and new plaintiffs by the original plaintiff." *Id.* at 1280. The Plaintiffs urge this Court to distinguish the limited substitution of new plaintiffs in the instant case from what they label the trilogy of changes found in *Summit Office Park*: new class, new action and new plaintiffs. *Id.* at 1284. ("The only proper way a claim could be made was to file a new complaint with new plaintiffs, a new class, and a new cause of action."). Instead, the Plaintiffs posit that the more relevant Eleventh Circuit case is *Delta Coal Program v. Libman*, 743 F.2d 852 (11th Cir. 1984) in which the original plaintiffs were substituted, but the class, cause of action and underlying facts remained the same. In *Delta Coal*, two individual plaintiffs and a limited partnership filed suit with the partnership representing the interests of others not individually named; the court permitted the individual partners to be substituted in for the partnership once the court determined that the partnership could not assert any claims on its own behalf. *Delta Coal*, 743 F.2d at 852. The *Delta Coal* court explicitly narrowed the application of *Summit Office Park* to instances in which a plaintiff who lacks standing seeks to substitute not only new plaintiffs, but also a new class and a new cause of action. *Id.* at 857 n.6. "Here, by contrast, the operative facts and the cause of action are not changed, but only the formally named plaintiff. Fed. R. Civ. P. 17(a) was intended to extend to

precisely this kind of situation, to ensure that the suit is prosecuted by the one possessing the right sought to be enforced." *Id.*

The Defendant attempts to distinguish *Delta Coal* from the instant case on two grounds. First, in *Delta Coal* two of the original plaintiffs had standing even before the substitution and thus had standing to invoke the court's jurisdiction to make the substitution. The Defendant argues that *Delta Coal* limits substitution to cases in which at least one original plaintiff already had standing to bring the action and therefore to ask for a substitution. *Id.* at 852. In the instant case, the new Plaintiffs concede that the original Plaintiffs lacked standing, leaving no one from the original complaint with standing to file an amendment. However, at oral argument Plaintiff argued that their claim satisfies the irreducible requirements of constitutional standing, and what is in dispute is merely prudential standing. The irreducible requirements for constitutional standing are actual or imminent injury, causation and redressability. *Hollywood Mobile Estates v. Seminole Tribe*, 641 F.3d 1259, 1265 (11th Cir. 2011). Prudential standing issues arise when a party satisfies the constitutional elements but there are additional factors present that discourage the court from assuming jurisdiction over the action. *FDIC Ins. Corp. v. Morley*, 867 F.2d 1381, 1386 (11th Cir. 1989). One of these factors, found in the present case, is the assertion of third party rights instead of individual legal rights. The Plaintiff argues that this type of prudential standing error can be corrected through substitution, and does not require rise to the level of a defect in constitutional standing.

Second, the Defendant argues that the new plaintiffs in *Delta Coal* were the individual partners that had been represented by the partnership and thus there was an identity of interests between the old and new plaintiffs. In the instant case, the Defendant argues that the original

Plaintiffs did not represent the interests of the new Plaintiffs, and therefore there is no identity of interest between the old and new plaintiffs. However, the Plaintiffs' convincingly rebut this argument by specifying that the rights that both the old and new plaintiffs seek to assert belong to the estate of Mr. Cifuentes, and therefore an identity of interests exists. In other words, both the original and amended complaints are attempts to advance the rights of the same decedent; the only difference stems from the identification of who actually inherited the power to assert those rights under Columbian law.

Finally, the Defendant submits another Eleventh Circuit case, *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1307-10 (11th Cir. 2003), in which an administratively dissolved corporation filed suit for patent infringement. The corporation admitted that it lacked standing at the time the suit was filed, but argued that Florida's revival statute retroactively conferred standing. Notably, this case did not involve substitution under Rule 17, but rather an interpretation of standing for reinstated corporations under Florida law. The court ruled a standing defect under these circumstances could not be cured "after the inception of the lawsuit" and precluded the subject-matter jurisdiction of the court over the patent suit. *Id.* at 1310 ("the appellant in this case held no enforceable rights whatsoever in the patent at the time it filed suit, and therefore lacked a cognizable injury necessary to assert standing under Article III of the Constitution."). However, the Eleventh Circuit's ruling in *Paradise Creations* has limited applicability to the case before this court as the Eleventh Circuit framed the "sole issue on appeal" to be "whether a state corporate revival statute can retroactively confer Article III standing where it did not exist at the time the complaint was filed." *Id.* at 1309.

**B. Whether substitution should be permitted when an honest mistake is made and**

**the defendant is not prejudiced by such substitution**

Putting aside *Delta Coal* and *Summit Office Park*, at least one case in this district has held that new plaintiffs could be substituted for original plaintiffs who lacked standing if the erroneous designation was an "honest mistake." *James Ventures, L.P. v. Timco Aviation Serv. Inc.*, 2008 WL 895714 *4 (Apr. 2, 2008)(denying substitution of plaintiff who had been assigned right to indemnification because "a determination of the party with standing to sue was not difficult."). "'Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed' and 'to prevent forfeiture when determination of the proper party to sue is difficult or where an understandable mistake has been made.'" *Id.* (citing Fed. R. Civ. P. 17 (Advisory Committee Notes, 1966 Amendment)).

District courts elsewhere have also "allowed for substitution when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action." *Park B. Smith v. CHF Indus., Inc.*, 811 F. Supp. 2d 766, 773-74 (S.D.N.Y. 2011) (permitting substitution of true owner of patent when original plaintiff discovered it did not own it). *See also In re Vivendi Universal, S.A. Secs. Litig.*, 605 F. Supp. 2d 570, 584 (S.D.N.Y. 2009) (permitting substitution of original plaintiffs who lacked standing on the basis that a standing defect at the commencement of suit does not require dismissal of the action). More akin to the facts of this case is *Crawford Supply Grp. v. LaSalle Bank*, 2010 U.S. Dist. Lexis 4691 *11 (N.D. Ill. Jan. 21, 2010) in which the district court permitted the plaintiffs to substitute the name of the executor of an estate when the complaint had erroneously named the estate directly, holding that a "mistake of this nature is generally treated as a simple 'misnomer subject to correction, not dismissal.'"

Another case in this district addressing the honest mistake argument is *Live Entm't, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273 (S.D. Fla. 2003) in which Live Entertainment, Inc. attempted to file a breach of contract suit after it was assigned the contractual rights by one of the original contract signatories. However, the assignment was done improperly and as a result Live Entertainment, Inc. did not posses any contractual rights, and therefore lacked standing, at the time it filed suit. The *Live Entertainment* Court stated that Fed. R. Civ. P. 17(a) substitution is appropriate when "intended to prevent forfeiture when determination of the correct party to sue is difficult or when an understandable mistake has been made." *Id.* at 1276 (citing Fed. R. Civ. P. 17 Advisory Committee note (1966)). However, the *Live Entertainment* court found no honest or understandable mistake had led to the wrong plaintiff being named because two years prior to the filing of the suit a Broward County Circuit Court had ruled that the assignment had failed as a matter of law. *Id.* at 1276-77. Thus, Live Entertainment, Inc. and the original signatory to the contract had been put on notice that Live Entertainment, Inc. was not the proper party to bring the breach of contract suit. *Id.* at 1277. Accordingly, the facts of this Eleventh Circuit case could be distinguished from the Plaintiffs in the instant case on the basis that an identification of the correct Plaintiffs under Columbian intestacy law was difficult to make or that the Plaintiffs' mistaken identification of the decedent's siblings was understandable.

## CONCLUSION

THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss **(D.E. No. 18)**, filed on **March 13, 2012**.

THE COURT has considered the motion, response and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED. The Defendant's must file its Answer to the Amended Complaint by **July 11, 2012**.

DONE AND ORDERED in Chambers at Miami, Florida, this /0/ day of June, 2012.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record