UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 11 CV 23455 FAM

LAURA YELITZA CIFUENTES, and
MERLE DE LAS MERCEDES SILVA CASTRO,
GERARDO CARVAJAL, *on their own behalf,
and on behalf of all those similarly situated,*

       Plaintiffs,

v.

REGIONS BANK,

       Defendant.
_____/

ORDER GRANTING
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT,
CLASS COUNSEL'S APPLICATION FOR SERVICE AWARDS, AND
CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Final Approval of Class-Action Settlement, Class Counsel's Application for Service Awards, and Class Counsel's Application for Attorneys' Fees and Expenses (Plaintiff's "Motion") [D.E. 198]. This Court held a final fairness hearing on March 18, 2014. For the reasons explained below, Plaintiffs' Motion for Final Approval of Class-Action Settlement is **GRANTED**, Class Counsel's Application for Service Awards is **GRANTED**, and Class Counsel's Application for Attorneys' Fees and Expenses is **GRANTED**.

## OVERVIEW OF THE LITIGATION

This Action concerns the sale of "Investment Plans" by an entity commonly referred to as USPT. Plaintiffs maintain that these "Investment Plans" qualify as *"securities."* Plaintiffs alleged that USPT engaged in the unlawful sale of such securities insofar as it was engaged in business as a dealer of such securities without having been registered to do so. Plaintiffs maintain that the conduct of USPT constitutes a violation of Fla. Stat. § 517.12(1).

In turn, Fla. Stat. § 517.211(1) creates a remedy when there is an underlying violation of Fla. Stat. § 517.12(1). In pertinent part, the statute provides that the purchaser of securities sold in violation of Fla. Stat. § 517.12(1) may sue for damages. The statute goes on to provide that plaintiffs in such an action may sue not only the unregistered dealer, but also each person who qualifies as a *"person making the sale"* of such securities – *i.e.,* each person who qualifies as a *"seller"* of such securities. In this Action, Plaintiffs allege that Regions engaged in conduct that makes it liable as a *"seller"* of the Investment Plan securities.

Accordingly, Plaintiffs brought a single claim against Regions alleging that Regions is liable for the unlawful sale of securities in violation of Fla. Stat. § 517.211(1).

Plaintiffs' Second Amended Class-Action Complaint defines the Class as:

**All persons and entities who made investments in an Investment Plan (the "Class") between September 21, 2006 and August 31, 2009 ("Class Period").**

Regions denies that it is liable to the Class under Fla. Stat. § 517.211(1) or that it did anything untoward in conjunction with the sale of the Investment Plans.

## PROCEDURAL BACKGROUND

Plaintiffs filed their original Class Action Complaint on September 21, 2011 and an Amended Class-Action Complaint on February 17, 2012. Thereafter, Regions filed, and the Parties fully briefed, a potentially dispositive motion to dismiss. After oral argument before the Court for the Court entered its Order Denying the Motion to Dismiss.

Almost immediately thereafter, Regions filed, and the Parties fully briefed, a motion seeking leave to file a permissive appeal with the Eleventh Circuit Court of Appeal pursuant to 28 U.S.C. § 1292(b). The Court entered its Order Granting In Part Defendant's Motion for Certificate of Appealability, and also stayed this matter pending review by the Eleventh Circuit. The Eleventh Circuit denied Regions' Petition for Permission to Appeal. This Court then lifted its stay and set the matter for trial.

The Court denied a renewed motion to dismiss on October 10, 2013, and counsel for the Parties conducted voluminous discovery, including the production of more than 400,000 pages of documents. Counsel deposed thirteen witnesses in Florida, Alabama, Texas, New York, and Colombia. Wholly separately, the Parties served subpoenas allowing them to obtain discovery from the court-appointed Special Fiduciary in that action pending in Miami-Dade County Circuit Court, styled *In re: Certain Trust Agreements*, Miami-Dade County Circuit Case No. 09-CP-659-CA02 (the "First Probate Action").

Completely separately, Plaintiffs took action in two other litigations. First, Plaintiffs recognized that there were specific funds (the "Remainder Funds") at issue in the First Probate Action, that arguably belonged to the Class. As such, Plaintiffs filed a motion requesting permission from this Court to deposit funds pursuant to Rule 67, which motion this Court granted. Shortly thereafter, Plaintiffs moved to intervene in the First Probate Action to make known their claim to

the Remainder Funds. Second, Plaintiffs filed an entirely separate lawsuit in circuit court, styled *In re Disposition of Remainder Funds From Certain Trust Agreements*, Miami-Dade County Circuit Court Case No. 13-2576-CP-02 (the "Second Probate Action"), to request specifically that the circuit court assume jurisdiction over the Remainder Funds – precisely so that they could be transferred to this Court. Ultimately, both probate actions were consolidated, and the Florida circuit court authorized the transfer of the Remainder Funds to this Court. Thereafter, over the course of three different transactions, the total sum of $12,557,818.23 was transferred to this Court.[1]

As this matter drew near the designated trial date, the Parties intensely briefed significant motions *in limine* and other pre-trial motions. To note just a few, the following matters were fully briefed and pending at the time the Parties entered into the Settlement Agreement:

- Defendant Regions Bank's Motion *In Limine* To Exclude Mention of the SEC Civil Enforcement Action Against USPT;

- Defendant Regions Bank's Motion *In Limine* To Exclude Mention at Trial of Regions' Consent Agreement with the SEC; and

- Plaintiffs' Motion to Permit Use of Summary Evidence;

There also were several potentially case-dispositive matters that were fully briefed and pending at the time the Parties entered into the Settlement Agreement, specifically:

- Plaintiffs' Motion for Partial Summary Judgment [on Liability];

- Plaintiffs' Motion for Partial Summary Judgment [on Damages];

- Plaintiffs' Motion for Class Certification; and

- Defendant Regions Bank's Motion for Summary Judgment.

Finally, the Parties expended great effort in negotiating a resolution of this matter. The

---

[1] At the fairness hearing the Court agreed to accept an addititional deposit of $4,265.12.

Parties engaged in extensive mediation of this matter over the course of several months and did not agree to terms until Friday, November 8, 2013 – on the eve of oral argument regarding the Parties' cross-motions for summary judgment and Plaintiffs' motion for class certification and just weeks before the commencement of the scheduled trial period.

### THE SETTLEMENT AGREEMENT

The Settlement resolves the claim pleaded against Regions and provides substantial monetary benefits to the Class. The key feature of the Settlement is the creation of a common fund in the amount of $13,053,473.11. The Settlement also contains meaningful non-monetary terms.

The Settlement further discloses that Class Counsel shall seek reasonable Service Awards for the Class Representatives and an award for attorneys' fees (not to exceed 30% of the common fund) and the reimbursement of expenses – all to be paid from the common fund.

The Settlement contemplates that the common fund shall be allocated *pro rata* to the members of the Class, such that, after payment of Court-approved Service Awards to the Class Representatives and Court-approved attorneys' fees and expenses, the remaining portion of the common fund will be paid to Class members based upon the amount of money actually invested in Investment Plans during the class period (plus interest) less any return of investment received by the Class members (applied on a first-in-first-out basis). The precise protocol for distribution of the common fund is explained at great length in the actual Notice. Finally, the Settlement contemplates that the Court shall reserve jurisdiction to supervise the consummation and administration of the Settlement.

### CLASS NOTICE

Class Counsel went to great lengths to make sure the Class received the best Notice practicable.

First, Class Counsel retained Epiq Class Action and Mass Tort Solutions, Inc. ("EPIQ") to act as Class Action Administrator.

Second, Class Counsel retained Mr. Aldo Mancini, who previously had been retained by USPT to create and maintain its customer database and thereafter was retained by the Special Fiduciary appointed by the court in the First Probate Action to maintain and update the USPT customer database for purposes of making distributions in that matter. The USPT database contains the names and last known addresses for all USPT customers who purchased Investment Plans, including the names of all Class members. Mr. Mancini was directed to cull from that database a complete list of USPT customers who made contributions to an Investment Plan during the class period. That is to say, Mr. Mancini was directed to create a complete mailing list for all members of the Class. The resulting mailing list then was provided to EPIQ for purposes of sending the Court-approved Notice to the class. And EPIQ timely sent Notice to all members of the Class on or before January 14, 2014.

Third, the following information was posted [in both English and Spanish] on both the website maintained by the Special Fiduciary [www.usptspecialfiduciary.com] and also on the website previously maintained by the Court-appointed Administrator (and currently maintained by EPIQ) [www.usptadministrator.com]:

> The parties to the class action pending in federal court styled *Cifuentes, et al. v. Regions Bank*, Case No. 1 1-CV-23455-FAM, have agreed to the terms of a proposed settlement. A copy of the formal Notice approved by the Court is attached [click here for English] [click here for Spanish]. A copy of the Notice [in both English and Spanish] will be sent via courier by DHL (or other reputable carrier) to all members of the Class at the best address in the possession of Class counsel (based on the database previously maintained by USPT). Those who are not members of the Class and wish to be heard at the Final Fairness Hearing (to determine whether the Court shall approve the proposed Settlement) must file a formal motion with the Court

seeking to intervene in these proceedings.

Fourth, Class Counsel set up a specially designated and segregated e-mail address [RegionsClassActionSettlement@dkrpa.com] to field inquires related to the Notice.

Substantively, the Notice describes the nature, history, and status of the Action; sets forth the definition of the Class; describes the terms of the Settlement and the proposed plan of distribution; explains the procedure to "opt out" of the Settlement; explains the procedure for Class members to enter an appearance through counsel and file an objection to the Settlement; and explains the binding effect of the Settlement, if approved. The Notice also discloses that Class Counsel would seek reasonable Service Awards for the named Class Representatives and an award of attorneys' fees (not to exceed 30% of the common fund) and reimbursement of reasonable expenses – all to be paid from the common fund. Finally, the Notice supplies the date, time, and place of the Final Fairness Hearing.

## DISCUSSION

### The Class-Action Settlement Is Approved

Under Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."

In this case, the Parties agreed to the Settlement prior to the certification of the Class. The law, of course, embraces the notion that "[a] class may be certified solely for the purposes of settlement where settlement is reached before a litigated determination of the class certification issue." Lipuma v. Am. Express Co., 406 F. Supp.2d 1298, 1313-14 (S.D. Fla. 2005). But the law is equally clear that the requirements of Rule 23 "demand undiluted, even heightened, attention in the settlement context."

"Settlement agreements are highly favored in the law and will be upheld whenever possible

Page 7 of 15

because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."

In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1005 (5th Cir. 1977).

But prior to issuing final approval of a class-action settlement, the Court must review and satisfy itself as to three core components:

1. That adequate Notice was provided to the Class;
2. That the Settlement is fair, adequate, and reasonable; and
3. That the Class satisfies the requirements of Rule 23.

The Court is satisfied as to all three.

Here, the Court finds that the Settlement was not the product of collusion.

In finding that the Settlement is fair, adequate, and reasonable, the Court evaluates the six factors discussed in Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984):

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or which the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which settlement was achieved.

### 1. The Likelihood of Success at Trial

At the time the Parties agreed to terms, there was great risk facing Plaintiffs and the Class that could have resulted in Plaintiffs and the Class recovering far less than the common fund created *vis-a-vis* the Settlement or, far worse, nothing at all.

With regard to the core issue of liability, this case presented two (2) main hurdles that Plaintiffs would have had to clear in order to recover anything. First, Plaintiffs would have had to establish that the Investment Plans qualify as *"securities"* under applicable law. Second, Plaintiffs would have had to establish that Regions qualifies as a *"seller"* of the Investment Plans. In order to recover anything, Plaintiffs had to prevail on both of those arguments. If either issue had been decided adversely to Plaintiffs, then Plaintiffs would not have recovered anything at all.

And even assuming that Plaintiffs prevailed on the core issue of liability, it should not be presumed that Plaintiffs would have obtained a meaningful recovery. Plaintiffs alleged the damages sustained by the Class exceed $38,000,000. But that assumes that Plaintiffs would prevail on two main legal arguments. First, Plaintiffs would have had to establish that each and every contribution made by all members of the Class counts as a separate, actionable securities transaction under the investment-decision doctrine. Second, Plaintiffs would have had to establish that funds received by members of the Class – either from the self-directed closing of their accounts or from distributions paid by the Special Fiduciary – should be applied on a first-in-first-out basis rather than a last-in-first-out basis. And if either issue had been decided adversely to Plaintiffs, then the damages recoverable by the Class likely would have plummeted to a level far below the amount of the Settlement.

### 2. The Range of the Recovery

The second and third factors [*i.e.*, the range of possible recovery and the range of possible recovery at which a settlement is fair, adequate, and reasonable] are easily combined and normally considered in concert. In making this evaluation the Court finds that the range of possible recovery is anywhere from $0 to more than $38 million. Against the backdrop, the Settlement creates a common fund in excess of $13,000,000, which represents approximately 35% of the maximum damages potentially recoverable by the Class. Measured against the risks presented, the Court finds that the amount of the Settlement falls within the range of the possible recovery at which a settlement is fair, adequate, and reasonable.

### 3. The Complexity, Expense, and Duration of the Litigation

This matter obviously was complex. But it also was expensive. Indeed, Class Counsel had to advance more than $100,000 in expenses just to get the case to the point of the Settlement. Had

this case proceeded to trial (and, presumably, appeal), then it stands to reason that the costs would have proliferated considerably. Finally, as to the consideration of duration, the case took more than 2 ½ years to get to the point of Settlement. Had this case proceeded to trial (and, presumably, appeal), then it stands to reason that the case would have taken much longer than that.

### 4. The Substance and Amount of Opposition to the Settlement

The law recognizes that "the reaction of the class is an important factor" in evaluating a class-action settlement.

No Class member or other interested party has objected to the Settlement, and the number of "opt-outs" is also low. Out of 5,468 members of the Class, only 20 have elected to "opt out" as of the March 3, 2014 deadline – *i.e.*, far less than 1%.

It is also noteworthy that even though Class members did not have to do anything to participate in the Settlement, no fewer than 33 members of the Class took the time to state, in writing, that they are particularly pleased with the Settlement and/or wish to participate in it.

### 5. The Stage of the Proceedings at Which Settlement Was Achieved

Here, the matter obviously had advanced to the point where Plaintiffs had access to sufficient information to evaluate the merits of the case and weigh the benefits of the settlement against further litigation. The Parties had completed all discovery and fully briefed cross-motions for summary judgment, class certification, and all pre-trial motions.

### The Settlement Complies with the Prerequisites of Rule 23

This Court previously found that the requirements of Rule 23(a) and 23(b)(3) are satisfied here for purposes of preliminary approval. And the Court hereby reiterates those findings. More specifically, with regard to Rule 23(a), the Court finds that: (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to all members of

Page 10 of 15

the Class; (3) the claim of the Class Representatives is typical of the claim of all members of the Class; and (4) the Class Representatives and Class Counsel fairly and adequately have protected the interests of the Class. And with regard to Rule 23(b)(3), the Court finds that: (1) the common questions of law and fact predominate over individual issues; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

Finally, Rule 23(g) states that "a court that certifies a class must appoint class counsel." In appointing, class counsel, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. The Court finds that Dimond Kaplan & Rothstein, P.A., Sallah Astarita & Cox, LLC, and the Silver Law Group have satisfied all the prerequisites of Rule 23(g) and otherwise have done an excellent job in prosecuting and settling this Action. As such, the Court appoints the law firms of Dimond Kaplan & Rothstein, P.A., Sallah Astarita & Cox, LLC, and the Silver law Group as "Class Counsel."

## CONCLUSION REGARDING APPROVAL OF CLASS-ACTION SETTLEMENT

For all the foregoing reasons, Plaintiffs' Motion for Final Approval of Class-Action Settlement is **GRANTED**. But as noted in the Court-approved Notice, the administration of the Settlement may involve two (2) or more rounds of distributions, as well as the possibility of a *cy pres* award at the end of the distribution protocol. *See* Notice [D.E. 182-3] at pp. 9-11. As such, the Court shall retain jurisdiction over this matter, the Settlement, and the distribution protocol to entertain appropriate motions as may be necessary in conjunction with the administration of the Settlement.

### Service Awards Are Appropriate for the Class Representatives

Class Counsel has applied for a service award in the amount of $5,000 for each Class

Representative. Here, the Class Representatives clearly devoted considerable time and resources to this Action. Specifically, the Class Representatives maintained regular contact with Class Counsel, responded to written discovery requests, and appeared for depositions (which required Ms. Cifuentes and Ms. Castro to travel from Colombia to Miami, and Mr. Carvajal to travel from a remote, provincial city in Venezuela to Bogota, Colombia). In addition, Ms. Cifuentes and Ms. Castro traveled from Colombia to Miami to attend a full-day mediation of this matter. Moreover, no objections have been filed against the requested Service Awards. As such, the Court approves the application of Service Awards in the amount of $5,000 for each of the Class Representatives – to be paid from the common fund.

As such, Class Counsel's application for Service Awards in the amount of $5,000 for each of the named Class Representatives is **GRANTED**.

### Class Counsel's Application for Attorneys' Fees and Expenses

Class Counsel has filed an application for attorneys' fees equal to thirty percent (30%) of the $13,053,473 common fund created through their efforts in prosecuting and settling this Action.

As recognized by the United States Supreme Court, the law is well established that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). And as the Eleventh Circuit made clear in Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768 (11th Cir. 1991), the law is equally well established in this jurisdiction that "[a]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." Camden I, 946 F.2d at 771.

Per Camden I, the nonexclusive list of factors the Court should consider in determining the reasonableness of the attorneys' fees are as follows:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 772 n.3. In support of their request for attorneys' fees equal to 30% of the common fund, Class Counsel has presented the Declaration of David A. Rothstein, Esq., lead trial counsel for Plaintiffs in this Action, and the Declaration of Robert C. Gilbert, Esq., recognized as one of the leading class-action practitioners in this jurisdiction. Both Declarations analyze each of the factors set forth in Camden I, and conclude that each and every one of them supports the reasonableness of the instant fee request. This Court agrees. This Court independently has analyzed the Camden I factors against the unique facts of this case and concludes that each and every one of them support the reasonableness of the instant fee request. Moreover, no objection has been filed against the requested fee award. As such, the Court approves the application for attorneys' fees of $3,916,041 – to be paid from the common fund.

Class Counsel also has applied for expenses in the amount of $531,800.08. The Court finds that $523,748.55 of the requested expenses to be reasonable and necessary in furtherance of the prosecution and settlement of the Action. The Court finds the following expenses as **not** necessary:

| $2019.08 | FEDEX and Esquire & UPS Service Charges |
|---|---|

| | |
|---|---|
| $450 | Air Conditioning Costs |
| $250 | Air Conditioning Costs |
| $300 | Air Conditioning Costs |
| $238.90 | Storage with Brodsky Law Firm |
| $220.75 | Storage with Brodsky Law Firm |
| $3,078.40 | Storage with Brodsky Law Firm |
| $1,054.30 | Scanning/Bates-Stamping |
| $40 | Witness Fee Richard Broadsky |
| $7,651.43 | **TOTAL** |

In addition, the Court will reduce the requested subpoena fees of $885.67 by $400 to $485.67. The total of $8,051.43 is subtracted from $531,800.08 requested. The Court therefore approves the award of **$523,748.55**.

## CONCLUSION

The Court approves Plaintiffs' Motion for Final Approval of Class-Action Settlement, Class Counsel's Application for Service Awards, and Class Counsel's Application for Attorneys' Fees and Expenses. The Court has considered the Motion for Final Approval, the pertinent portions of the record, and is otherwise fully informed. Accordingly, it is

**ORDERED** and **ADJUDGED** as follows:

(1) Plaintiffs' Motion for Final Approval of the Class-Action Settlement is **GRANTED** – such that the Settlement is approved (and the Court shall retain jurisdiction of this matter to oversee the administration of the Settlement);

(2) Class Counsel's Application for Service Awards is **GRANTED** – such that Class Counsel is authorized to pay each of the Class Representatives a Service Award in the amount of $5,000 all to be paid from the common fund; and

(3) Class Counsel's Application for Attorneys' Fees and Expenses is **GRANTED** – such that Class Counsel is entitled to attorneys' fees in the amount of $3,916,041 and expenses in the amount of $523,748.55, all to be paid from the common fund.

The Court further notes that the Court-approved Notice foreshadowed the likelihood of multiple rounds of distributions, as well as the possibility of a *cy pres* award at the conclusion of the distribution protocol, and that there likley would be additional expenses in conjunction with additional rounds of distributions. As such, the Court hereby invites Class Counsel to submit further applications for additional expenses as necessary in the course of administering the settlement as well as suggestions for a possible *cy pres* award.

**DONE AND ORDERED** in Chambers at Miami, Florida this 20 day of March, 2014

_____
Federico A. Moreno
United States District Judge

Copies Provided to:

Counsel of Record